**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DALE MACHALLECK,　　　　　　　　　　)
and JUANITA HERRON,)　　　　　　　　　
on behalf of plaintiffs and the classes　　　)
described herein,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　08 C 1340
　　　　　　　　Plaintiffs,　　　　　　　)　　Judge Hart
　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Valdez
　　　　　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
DATA SEARCH N.Y., INC.　　　　　　　　)
d/b/a TRAK AMERICA, LLC　　　　　　　)
and TRAK AMERICA, and　　　　　　　　)
ELITE RECOVERY SERVICES, INC.,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　)

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.　　INTRODUCTION

　　　　Plaintiffs have requested that this Court enter an order determining that this Fair

Debt Collection Practices Act ("FDCPA") action may proceed as a class action against

defendants Elite Recovery Services, Inc. ("Elite"), Data Search N.Y., Inc., d/b/a Trak America,

LLC and Trak America ("Trak America"), on behalf of three classes, pursuant to Fed. R. Civ. P.

23(a) and 23(b)(3).

　　　　Class A consists of (a) all individuals (b) against whom legal proceedings

were filed in Illinois (c) on or after March 5, 2007 and on or before March 25, 2008, (d) in which

was filed (e) an affidavit in the form of Exhibit A or Exhibit B (f) where the affiant was

employed by Trak America.

Class B consists of (a) all individuals (b) against whom legal proceedings were filed in Illinois, (c) by Elite Recovery Services, Inc., (d) on or after March 5, 2007 and on or before March 25, 2008, (d) in which was filed (e) an affidavit executed by a person who is an employee of a company other than Elite Recovery Services, Inc., (f) stating that the affiant is an "agent" of Elite Recovery Services, Inc., (g) which did not in its text identify the company employing the affiant.

This memorandum is submitted in support of that motion.

## II.    NATURE OF THE CASE

Defendant Trak America operates the "Trak America legal network", which "determines with unparalleled accuracy exactly which accounts are worth pursuing," selects collection attorneys from a network of over 100, "transmit[s] suit worthy accounts to the right attorney quickly and efficiently," and forwards the necessary information and documentation. Trak America treats the processing of claims as "a high volume production operation".

In operating this attorney network, Trak America systematically violates the FDCPA's prohibition against debt collectors using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . . " 15 U.S.C. § 1692e(14).

Trak America prepares affidavits for filing in each collection lawsuit, most of which end in default judgments.  (Exhibits A, B, & D)  When it prepares the affidavits, Trak America  has one of its own employees  act as the affiant.   The affidavits state that the affiant is the "agent" of the company bringing the lawsuit—Elite in the case of Mr. Machalleck and Ms. Herron—and do not disclose that the affiant is actually employed by Trak America.  The affiants

also assert that they can testify at trial as to the facts relating to the debt.

By describing the affiant as an "agent" of plaintiff, without identification of the company for which the affiant works, the affidavits conceal the identity of the business preparing the document, Trak America, and appear to come from Elite. This amounts to the use by Trak America of a business, company, or organization name ("Elite") other than the true name of the debt collector's business, company, or organization.

The reason for the violation is obvious. An employee of a third party debt collector, such as Trak America, cannot authenticate Elite records or testify about transactions between the consumer and Elite. Disclosure of the fact that the affiant is an employee of Trak America would lead one to question how such testimony could be given. Accordingly, the affidavits also violate the general prohibition of false statements in 15 U.S.C. §§ 1692e and 1692e(10).

## III.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct that harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

3

In enacting the FDCPA, Congress recognized the --

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one—whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Fin. Services, Inc., 839 F. Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997); Baker, 677 F.2d at

4

780-1; <u>Woolfolk v. Van Ru Credit Corp.</u>, 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990);

<u>Cacace v. Lucas</u>, 775 F. Supp. 502 (D. Conn. 1990); <u>Riveria v. MAB Collections, Inc.</u>, 682 F.

Supp. 174, 177 (W.D. N.Y. 1988); <u>Kuhn v. Account Control Technol.</u>, 865 F. Supp. 1443, 1450

(D. Nev. 1994); <u>In re Scrimpsher</u>, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); <u>In re Littles</u>, 90

B.R. 669, 680 (Bankr. E.D. Pa. 1988), aff'd as modified sub nom. <u>Crossley v. Lieberman</u>, 90 B.R.

682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce

the public policies expressed therein.  <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 666  (7th

Cir. 2001);  <u>Baker</u>, 677 F.2d at 780; <u>Whatley v. Universal Collection Bureau</u>, 525 F. Supp. 1204,

1206 (N.D.Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers . . . ."

<u>FTC v. Shaffner</u>, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the

FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts

are not at liberty to excuse violations where the language of the statute clearly comprehends them

. . . ."  <u>Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiffs need not prove intent, bad faith or negligence in an FDCPA case.  The

"FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary

judgment for the plaintiff." <u>Cacace v. Lucas</u>, 775 F. Supp. at 505.  <u>Accord</u>, <u>Turner v. J.V.D.B. &</u>

<u>Associates, Inc.</u>, 330 F.3d 991, 995  (7th Cir. 2003); <u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d

469, 472 (7th Cir. 2000).

## IV.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court

stated in <u>Eshaghi v. Hanley Dawson Cadillac Co.</u>, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist.

1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. Shea v. Codilis, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); Roe v. Publishers Clearing House, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Nielsen v. Dickerson, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); Sledge v. Sands,182 F.R.D. 255 (N.D. Ill. 1998); Shaver v. Trauner, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); Davis v. Suran, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July 31, 1998); Francisco v. Doctors & Merchants Credit Service, Inc., 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998); Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); Wells v. McDonough, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); Miller v. Wexler & Wexler, 97 C

6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); Wilborn v. Dun & Bradstreet, 180 F.R.D. 347 (N.D. Ill. 1998); Arango v. GC Services LP, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); Avila v Van Ru Credit Corp.,94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, Avila v. Rubin, supra, 84 F.3d 222; Carr v. Trans Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## V.    THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.    Rule 23(a)(1) -- Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ."

7

Riordan, 113 F.R.D. at 62.  Where the class numbers at least 40, joinder is generally considered

impracticable.  Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648,

653 (4th Cir. 1967) (finding a class of 18 sufficient); Swanson v. American Consumer Industries,

415 F.2d 1326, 1333 (7th Cir. 1969) (finding a class of 40 sufficient); Riordan, 113 F.R.D. 60

(10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452,

463 (E.D.Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.

Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D.

Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A

class action may proceed upon estimates as to the size of the proposed class."  In re Alcoholic

Beverages Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169

(E.D.N.Y. 1986).

   The court may "make common sense assumptions in order to find support for

numerosity."  Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983).

"[T]he court may assume sufficient numerousness where reasonable to do so in absence of a

contrary showing by defendant, since discovery is not essential in most cases in order to reach a

class determination . . . Where the exact size of the class is unknown, but it is general knowledge

or common sense that it is large, the court will take judicial notice of this fact and will assume

joinder is impracticable."  2 Newberg on Class Actions (3d ed. 1992), § 7.22.A.

   Here, for the reasons stated in plaintiffs' motion, it is reasonable to infer that the

number of class members exceeds the 20-40 minimum necessary.  Swiggett v. Watson, 441 F.

Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware

motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such

transfer in and of itself sufficient to show that numerosity requirement was satisfied); <u>Westcott v. Califano</u>, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); <u>Carr</u>, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); <u>Colbert</u>, 1995 U.S. Dist. LEXIS 578 (same); <u>Keele</u>, 1996 U.S. Dist. LEXIS 3253.

**B.**     **Rules 23(a)(2) and 23(b)(3)  – Predominance of common questions of law or fact**

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. <u>Halverson v. Convenient Food Mart, Inc.</u>, 69 F.R.D. 331, 334 (N.D. Ill. 1974).  Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." <u>Franklin v. City of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>accord</u>, <u>Patrykus v. Gomilla</u>, 121 F.R.D. 357, 361 (N.D. Ill. 1988); <u>Carroll v. United Compucred Collections</u>, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn.  Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn.,  Mar. 31, 2003),

aff'd, 399 F.3d 620 (6th Cir. 2005); <u>Wahl v. Midland Credit Mgmt.</u>, 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D.Ill., May 30, 2007); <u>Smith v. Nike Retail Services, Inc.</u>, 234 F.R.D. 648, 659 (N.D.Ill. 2006). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. <u>Halverson</u>, <u>supra</u>, 69 F.R.D. at 334-336; <u>Haroco v. American Nat'l Bank</u>, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); <u>Kleiner v. First Nat'l Bank</u>, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (same); <u>Heastie v. Community Bank</u>, 125 F.R.D. 669, 675 (N.D. Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights); <u>Carroll v. United Compucred Collections</u>, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *47-48 (M.D. Tenn. Nov. 15, 2002) (collection practices).

In this case, the "common nucleus of operative fact," <u>Halverson</u>, 69 F.R.D. at 335, is that Trak America prepared similar affidavits with respect to all members of the classes. This conduct gives rise to the predominant common question of whether the affidavits violate the FDCPA because (a) they amount to the conduct of the business of Trak America under a false name, or (b) the statements in the affidavits are false.

The only individual issue is the identification of the class members, a matter capable of ministerial determination from defendant's records, the records of its attorneys, or court files. The task has in large part already been completed. In any event, questions readily answerable from defendant's files do not present an obstacle to class certification. <u>Heastie v. Community Bank</u>, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely

comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

In the present case, not even damages present an individual question, for plaintiffs are only seeking statutory damages. In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." Id.

C.      **Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definitions. By definition, each of the class members was the subject of a form affidavit similar to that used against plaintiffs. All class members' claims turn on the failure of the affidavit to state that the affiant is employed by Trak America and the content of the affidavit.

### D.    Rule 23(a)(4) -- Adequacy of representation

The rule also requires that the named plaintiffs provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiffs must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiffs understand the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit F, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiffs are coincident with the general interests of the class. Here, both plaintiffs and the class members seek money damages as the result of defendant's unlawful collection practices. Given the identity of claims between plaintiffs and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiffs and those of the class.

12

E.      **Rule 23(b)(3) -- Class action is superior to other available methods of resolving this controversy.**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes, 143 F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims that might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom defendant is attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. <u>Zanni</u>, 119 F.R.D. 32.

## VI. CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiffs respectfully request that this Court certify this action as a class action.

Respectfully submitted,

s/ Michael J. Aschenbrener
Michael J. Aschenbrener

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michael J. Aschenbrener
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT A

FEB-19-2008(TUE) 16:47   Montecito Executive Services   (FAX)805 969 6151   P. 012/018

STATE OF NEW YORK   }
COUNTY OF NASSAU   }

Elite Recovery Services                    )
S/I/I TO HOUSEHOLDE/ORCHARD BANK            )
          Plaintiff,                       )
                                           )
   vs.                                     )
DALE R MACHALLECK                          )
                                           )
          Defendant(s)                     )

## AFFIDAVIT OF ACCOUNT BALANCE DUE

I, Lisa Kiesecbr, agent for the Plaintiff, hereby certify and affirm that the claim and cause of action of **Elite Recovery Services S/I/I TO HOUSEHOLDE/ORCHARD BA**, a corporation duly incorporated and existing under and by virtue of the Laws of the State of New York , against Defendant(s) is due and owing the principle sum of $892.85, as more fully stated in the Complaint (and attached Exhibits) filed against Defendant(s).  The debt continues to accrue interest at the rate of 5% from February 28, 2003 to the date of judgment; after which interest shall accrue at 9% per annum.

I further certify that I am duly qualified, competent to testify to the matters stated in the Complaint and herein, and authorized to make this affidavit.  I further state that the records of this account are maintained under my supervision, and that the amount of the claim is just and true, and to the best of my personal knowledge all just and lawful offsets, payments and credits have been allowed.

FEB 1 5 2007

This affidavit executed this ____ day of _____, 2___

Signature

Lisa Kiesecbr
Name printed

The foregoing affidavit sworn to and subscribed before me this ____ day of _____, 2___

Notary Public

04TI 642 2028

T05123

# EXHIBIT B

ELITE RECOVERY SERVICES, INC.
                    Plaintiff

vs.

JUANITA HERRON
                    Defendant

5424770844650320

## AFFIDAVIT

I, _Terry Kedbaka_ , being first duly sworn upon oath depose and state as follows:

1. That I am the agent in the above captioned matter and I am authorized and qualified to make this Affidavit in support for the judgment against the above named Defendant;

2. That Plaintiff is the purchaser or assignee of the Defendant's account from the original creditor, Bank First;

3. That Plaintiff maintains, in the regular course of business, computer records on which entries are made by a person with knowledge of the information therein and/or information transmitted from a person with such knowledge;

4. That after allowing for all offsets and credits, there remains a balance due on this account in the amount of $1,126.52.

5. That if called upon affiant can testify at trial as to all facts pertaining to this matter.

FURTHER AFFIANT SAYETH NOT.

Subscribed and sworn to before me
this ___ day of _____, 2007

_____
NOTARY PUBLIC

**ALISA TETRO**
Notary Public, State of New York
No. 01TE6141272
Qualified in Suffolk County
Commission Expires February 21, 2010

07-10740-0
3850-01
H146027

**EXHIBIT C**



PROVEN LEGAL STR

HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS



WELCOME to the proven nationwide legal process that has recovered millions of dollars thought to be unrecoverable for the country's largest creditors and debt buyers.

**Recent News:**

▶ January 15, 2(
  TRAKAmer
  To Manage

▶ October 2, 200
  TRAKAmer
  Announces
  3.0

▶ September 26
  TRAKAmer
  Expands; A
  Executive

▶ September 15
  TRAKAmer
  Announces
  Performan

▶ March 23, 20(
  TRAKAmer
  Announces
  Collection
  Performan

▶ October 31, 2(
  TRAKAmer
  Announces
  2.0

STEP 1: Our **FASTRAK** predictive model determines with unparalleled accuracy exactly which accounts are worth pursuing.

STEP 2: **Secure, streamlined and automated processes** transmit suit worthy accounts to the right attorney quickly and efficiently.

STEP 3: The **TRAKAmerica legal network**—the best in the business—obtains your legally enforceable judgments.

STEP 4: Our in-house **skip tracing** experts facilitate execution on your judgments by identifying hard-to-find assets and collecting the money owed to you.

RESULT: **Maximum net back for TRAKAmerica clients.**

*"TRAKAmerica recovered more than $27 million last quarter on warehouse paper we thought was uncollectible."*

— *Publicly traded US credit card Issuer*

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



## Obtain A Customized FASTRAK Sample Analysis

TRAKAmerica would be happy to analyze a sample of your portfolio using our FASTRAK scoring model. The model uses more than 30 case-level variables built on empirical data from more than one million claims and $100 million in court costs in all fifty states to determine which accounts are worth pursuing with pinpoint accuracy — **no more wasting time and money on uncollectible accounts.**

To take advantage of this no cost, risk-free offer for a customized FASTRAK Analysis, submit the form below.

Debt buyers or c
would like more i
about TRAKAme
call 800.277.443
info@TRAKAme

HOME
ABOUT TRAK
TRAK ADVANTAGES
TRAK PROCESS
FASTRAK SAMPLE
NEWS & EVENTS

Items marked with an asterisk (*) must be completed.



First Name*
Last Name*
Title
Firm*
Address 1
Address 2
City
State
Zip
Phone
Email*

Submit Query

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



PROVEN LEGAL STR



HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## Management Team

### Thomas Milana
**President and Chief Executive Officer**
TRAKAmerica's founder is a noted collections industry leader who has enjoyed a successful 20-year career as both a collections agency owner and operator and a successful debt buyer.

Despite TRAKAmerica's phenomenal growth, Tom remains involved in the day-to-day business of helping clients leverage the TRAKAmerica model to maximize their net back. Tom is exceptionally knowledgeable about the challenges and issues facing today's creditors and is committed to fair, safe, and ethical business practices. [top]

### Thomas Dalessandro
**Managing Partner**
Cofounder and resident technology guru, Tom began his career working at a collection law firm nearly 20 years ago. A software developer by trade, Tom honed his analytic skills and economic acumen at the University of Chicago Graduate School of Business. He is the chief architect of TRAKAmerica's unique proprietary software and technology infrastructure. It's Tom's FASTRAK statistical model that enables us to predict liquidation rates and seamlessly interface with our clients' technology for reliable reports and payments. [top]

### Wade Ferguson
**Vice President Network Management & Client Services**
Wade has more than fifteen years of experience in the collections and recoveries industry, including many years working directly with agencies and creditors. He gained eight years experience at Capital One managing various recovery functions, as well as their legal outsourcing program. At TRAKAmerica, Wade is responsible for managing the attorney network and building client relations. [top]

### Matthew Wolk
**Vice President of Network Management & Compliance**
Matt is responsible for attorney network and agency management, process improvement and audit and compliance functions, including managing call center agencies for non-legal collections. Prior to joining TRAKAmerica, Matt was Process and Agency Manager for Capital One, where he gained 15 years experience managing collections and



TRAKAmerica ha
unique mix of exp
experienced lead
best legal strateg
management team
industry.

Thomas Milana
President & Chief
Officer

Thomas Dalessa
Managing Partne

Wade Ferguson
Vice President of
Management & C

Matthew Wolk
Vice President of
Management & C

Tony La Veglia
Vice President of

Karl Hernandez
Vice President of
Management

[top]

recoveries and legal network suppliers. He played a key role in
reducing expenses for Capital One through both vendor pricing
negotiation and operating procedure and compliance program
improvements. [top]

**Tony La Veglia**
**Vice President of Operations**
A security specialist for more than 20 years, Tony holds a master's
degree in industrial security, maintains ASIS International professional
certification, and teaches security at Long Island University. Tony is
responsible for ensuring our physical plant, our legal network and
vendors fulfill governmental and client requirements. Our security has
been audited and received top marks by one of the country's top 10
credit card issuers. [top]

**Karl Hernandez**
**Vice President of Network Management**
A collections professional for more than 20 years, Karl is responsible
for the unprecedented success of our legal network management team.
After obtaining his paralegal degree, Karl worked for numerous law
firms specializing in collections and can anticipate the unique
challenges of our attorneys as they pursue and execute judgments on
behalf of TRAKAmerica's clients. [top]

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



PROVEN LEGAL STR



HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS



PREDICT YOU

GET TO C
QUICKLY & E

TRAKAMER
NETW

COLLECT &

Result: MAX

## The TRAKAmerica Process

### STEP 1: Predicting Your Success

At TRAKAmerica, we take the frustrating – and costly – guesswork out
of identifying which accounts in your portfolio are ultimately collectible.

Our **FASTRAK predictive model** features empirical data from more
than 1 million cases (and our investment of $100 million in court costs).
Each of the accounts in your portfolio is judged against over 30 case
level variables that go beyond evidence of real estate and employment.

Using this proprietary predictive technology, we can accurately assess
which accounts are suit worthy and project your liquidation rate and
cash flow after 12, 24, and 36 months.

It's **a superior process** to asset-based state level models that skew
results and are far less accurate.

### STEP 2: Getting To Court Quickly and Efficiently

Once we've run your portfolio through our model and reviewed the net
back projections, our TRAKAmerica team designs a **complete
recovery plan** based on your requirements.

First, we prepare your portfolio for our attorney network by identifying
suit worthy accounts and skip tracing them for accuracy (addresses,
names etc.). As we verify information, we also attempt to collect from
these accounts on your behalf.

As a legal network, we can use **legal talk off** language in these
conversations, which often means debtors agree to a payment plan
rather than face the legal process.

This immediately creates cash flow for you and also helps fund court
costs on accounts that ultimately will go through the legal process.

### STEP 3: The TRAKAmerica Legal Network

On day 31, we **electronically disburse your files** to our network

attorneys. They load your files into their systems and instantly send demand letters.

After the 30-day validation period expires, our attorneys sue those individuals who have not responded to their demand letters. Results are electronically posted and delivered to our offices each week.

It's an entirely transparent system for **full accountability**. Each week, our management team examines exception reports that reflect which accounts are still outstanding. The report includes:

- legal suit dates
- service dates
- court information
- judgment information (principle and interest)
- court costs
- attorney fees

Our clients have the option of connecting electronically to our reporting system so they can check on the status of their portfolio at any time.

Our collection firms also follow our **no-fail data security measures**, including firewall intrusion detection software, encryption, and stringent internal security control systems.

**STEP 4: Collecting and Disbursing Your Money**

At this stage, our TRAKAmerica team has obtained judgments on your bad debt accounts. We dedicate our efforts and resources—including in-house skip tracing and asset location programs—to collecting the money owed to you.

**Skip and asset information** is promptly supplied to our attorneys so they can devote their time to collecting from bank accounts, garnishing paychecks, and placing liens on properties.

We are no longer requesting money from debtors—we are actively taking it.

The **TRAKAmerica process works seamlessly with your organization's IT infrastructure** for reliable, secure reports and payments. Our clients can elect to receive payments weekly, bi-weekly, or however they prefer through our secure electronic system.

All data is safe guarded with **full-time, board-certified security experts** and technology that passes the most rigorous security audits by nationally recognized financial institutions.

**RESULT: Maximize Your Net Back**

Effective asset location, disciplined attorney management and the
ability to pick which accounts to sue with pinpoint accuracy all add up
to maximize your netback.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • Info@TRAKAmerica.c









HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## TRAKAmerica Adds To Management Team

SYOSSET, NY, January 15, 2007 — TRAKAmerica, the rapidly growing legal network management company, announced today that Matthew C. Wolk has joined the company as Vice President. Mr. Wolk will have broad responsibilities for compliance, attorney and agency management, and process improvement. "We are pleased to have Matt on board," said CEO Thomas Milana. "Matt brings tremendous experience that will help TRAKAmerica deliver more value for our clients."

Prior to joining TRAKAmerica, Mr. Wolk was Process and Agency Manager for Capital One, where he managed recoveries and legal network suppliers. He played a key role in reducing expenses for Capital One through both vendor pricing negotiation and operating procedure and compliance program improvements.

"In managing the various legal networks over the years, I have seen first hand the unique effectiveness of the TRAKAmerica approach. I'm really looking forward to being a part of this team and taking this approach to more creditors as we continue to build the company," said Wolk.

"2006 was another year of tremendous growth for us," said TRAKAmerica Managing Partner Thomas Dalessandro. "In the last quarter we topped $40 million in collections, saw more than a million accounts placed and added three publicly traded companies and one of the largest credit card issuers to our client list. Having Matt come on board is a great way to start 2007 as we continue to build out our business proposition and reach our goals."

## About TRAKAmerica

TRAKAmerica is a rapidly growing legal network management company that has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's recovery success is built on a nationwide network of local attorneys, combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate

*News*
*Announce*

▸ January 15, 2(
TRAKAmer
To Manage

▸ October 2, 20(
TRAKAmer
Announces
3.0

▸ September 26
TRAKAmer
Expands; /
Executive

▸ September 15
TRAKAmer
Announces
Performan

▸ March 23, 200
TRAKAmer
Announces
Collection
Performan(

▸ October 31, 2(
TRAKAmer
Announces
2.0

on the most suit-worthy accounts while its asset location skills and rigorous attorney management procedures ensure that each attorney follows the most statistically likely, cost effective path to recovery on every account. Since 2000, TRAKAmerica has won ongoing assignments from debt buyers, banks, finance companies, credit unions, auto lenders and others by delivering higher net backs in a secure, compliant environment. Creditors or debt buyers who would like more information about FASTRAK or who would like to run a test file should contact **info@TRAKAmerica.com** or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c





HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## TRAKAmerica Upgrades Recovery Model

SYOSSET, NY, October 2, 2006 — TRAKAmerica, the rapidly growing legal network management company, today announced the availability of FASTRAK 3.0, the latest release of its powerful legal recovery model. The new version of FASTRAK is more accurate and boasts additional features requested by clients.

"With this new model we can fine tune our recovery strategies to exactly hit a client's ROI objective," said Managing Partner Thomas Dalessandro. "Many clients have come to us asking us to be more aggressive; now we can dial in their requested net back and the model takes it from there."

The foundation of FASTRAK's accuracy is the extensive suit history on which it is built. The model now benefits from more than five years of legal recovery cases, encompassing over $40 million in court costs. FASTRAK 3.0 utilizes more than 30 case variables to accurately predict which cases are suit worthy and which are not.

"FASTRAK was originally built for credit cards and consumer loans, but we now have a version for auto deficiencies and we are developing additional versions for all the major classes of paper," said CEO Thomas Milana. "We are also expanding our state coverage. We recently added Texas, a notoriously debtor friendly state. Five years ago people doubted we would be able to make money in Pennsylvania and Florida, but we've proved them wrong. Now we're adding Texas to that list of successes. In fact, a debt buyer client of ours attributes a recent national auction win to the confidence that FASTRAK gave him that he could achieve a positive net back from the Texas portion of the portfolio."

"A legal strategy offers a number of advantages over traditional strategies," commented Dalessandro, "including a much higher liquidation rate and a more predictable recovery stream that is more resistant to economic downturns. But the key is knowing which accounts will produce a return on your investment in court costs and FASTRAK 3.0 is unmatched in its ability to do just that."

FASTRAK 3.0 is available effectively immediately to TRAKAmerica clients.

*News
Announce*

▶ January 15, 2
   TRAKAmer
   To Manage

▶ October 2, 20
   TRAKAmer
   Announces
   3.0

▶ September 26
   TRAKAmer
   Expands; A
   Executive

▶ September 15
   TRAKAmer
   Announces
   Performanc

▶ March 23, 200
   TRAKAmer
   Announces
   Collection
   Performanc

▶ October 31, 2
   TRAKAmer
   Announces
   2.0

**About TRAKAmerica**

TRAKAmerica is a rapidly growing legal network management
company that has been able to recover millions of dollars previously
believed to be unrecoverable for some of the most astute lenders in the
world. The company's recovery success is built on a nationwide
network of local attorneys, combined with a rigorous analytic approach
to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate
on the most suit-worthy accounts while its asset location skills and
rigorous attorney management procedures ensure that each attorney
follows the most statistically likely, cost effective path to recovery on
every account. Since 2000, TRAKAmerica has won ongoing
assignments from debt buyers, banks, finance companies, credit
unions, auto lenders and others by delivering higher net backs in a
secure, compliant environment. Creditors or debt buyers who would
like more information about FASTRAK or who would like to run a test
file should contact info@TRAKAmerica.com or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c





HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

### TRAKAmerica Expands, Adds Senior Executive

SYOSSET, NY, September 26, 2007 — TRAKAmerica, the rapidly growing legal network management company, has announced significant actual and planned expansion. "Over the past 12 months we've grown our staff by 50% due to new client business. By this time next year we expect to grow our staff another 50%," said CEO Thomas Milana.

In addition to the staff expansion, TRAKAmerica announced the appointment of Wade Ferguson to the position of Vice President of Network Management. Mr. Ferguson comes to TRAKAmerica after more than eight years at Capital One, where he managed various recovery functions, and was most recently involved with their legal outsourcing program. Mr. Ferguson has been in collections and recoveries for more than 15 years. "We are very pleased that Wade decided to join us. His big bank experience is going to be invaluable to us as we continue to grow our company," said Managing Partner Thomas Dalessandro.

"I was so impressed with TRAKAmerica's performance with Capital One that I made the decision to join TRAK's team and put my experience from Capital One to work at this entrepreneurial, fast moving company," said Ferguson.

Earlier this month, TRAKAmerica reported record collection and revenue results for its fiscal year. That growth and the current new business pipeline are driving significant expansion in staff and management. "Our model of an aggressive legal program and a rigorous analytic approach is producing superior results and we are being rewarded for it," said Dalessandro. "Given how small most creditors' legal programs are today, we have many years of growth ahead of us and will be adding additional key players in support of this goal."

### About TRAKAmerica

TRAKAmerica is a rapidly growing legal network management company that has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's recovery success is built on a nationwide

*News*
*Announce*

▶ January 15, 2(
TRAKAmer
To Manage

▶ October 2, 200
TRAKAmer
Announces
3.0

▶ September 26
TRAKAmer
Expands; A
Executive

▶ September 15
TRAKAmer
Announces
Performan

▶ March 23, 200
TRAKAmer
Announces
Collection
Performan

▶ October 31, 2(
TRAKAmer
Announces
2.0

network of local attorneys, combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate on the most suit-worthy accounts while its asset location skills and rigorous attorney management procedures ensure that each attorney follows the most statistically likely, cost effective path to recovery on every account. Since 2000, TRAKAmerica has won ongoing assignments from debt buyers, banks, finance companies, credit unions, auto lenders and others by delivering higher net backs in a secure, compliant environment. Creditors or debt buyers who would like more information about FASTRAK or who would like to run a test file should contact info@TRAKAmerica.com or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## TRAKAmerica Announces Record Performance

SYOSSET, NY, September 15, 2006 — TRAKAmerica, the rapidly growing legal network management company, announced record collections for both the year and quarter ending August 31, 2006. Commented CEO Thomas Milana, "We've had a great year, with four record quarters in a row. This last quarter was particularly strong. Our inventory crested one million accounts and two billion dollars. Just in the last quarter, we recovered more than 30 million dollars for our clients."

TRAKAmerica is unique among legal network managers because of its focus on analytics as a key tool in determining account level suit strategy. TRAKAmerica's proprietary FASTRAK statistical model is built on over 600,000 legal cases involving more than $40 million in court costs spent. In addition, TRAKAmerica takes a much more active approach to attorney management than more traditional firms. The most recent quarter's strong recoveries further validate the company's approach and execution, as well as resulting in contract renewals with a top 5 card issuer and several large debt buyers. The company also now has an auto version of FASTRAK that has led to servicing agreements with several big auto lenders.

"Our approach continues to pay off for our clients in terms of higher net back, and for TRAK in terms of more clients," said Managing Partner Thomas Dalessandro. "When we call on clients and show them our track record with other lenders, it really gets them sitting up in their seats. Our performance just gets better and better."

### About TRAKAmerica

TRAKAmerica is a rapidly growing legal network management company that has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's recovery success is built on a nationwide network of local attorneys, combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate on the most suit-worthy accounts while its asset location skills and rigorous attorney management procedures ensure that each attorney

News
Announce

▶ January 15, 2
TRAKAmer
To Manage

▶ October 2, 200
TRAKAmer
Announces
3.0

▶ September 26
TRAKAmer
Expands; A
Executive

▶ September 15
TRAKAmer
Announces
Performanc

▶ March 23, 200
TRAKAmer
Announces
Collection
Performanc

▶ October 31, 2
TRAKAmer
Announces
2.0

follows the most statistically likely, cost effective path to recovery on every account. Since 2000, TRAKAmerica has won ongoing assignments from debt buyers, banks, finance companies, credit unions, auto lenders and others by delivering higher net backs in a secure, compliant environment. Creditors or debt buyers who would like more information about FASTRAK or who would like to run a test file should contact **info@TRAKAmerica.com** or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • Info@TRAKAmerica.c



PROVEN LEGAL STR

HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## TRAKAmerica Announces Record Collection Performance

SYOSSET, NY, March 23, 2006 — TRAKAmerica, the rapidly growing legal network management company, announced record collections for the quarter ending March 31, 2006. Commented CEO Thomas Milana, "The first quarter was a great quarter for us. Our inventory crested 500,000 accounts and we were able to recover better than 2.5% of the inventory, which was a record."

TRAKAmerica is unique among legal network managers because of its focus on analytics as a key tool in determining account level suit strategy. TRAKAmerica's proprietary FASTRAK statistical model is built on over 400,000 cases, including over $10 million in court costs. In addition, TRAKAmerica takes a much more active approach to attorney management than more traditional firms. The most recent quarter's strong recoveries further validate the company's approach and execution. Traditional legal network managers might collect <x>% of their inventory in a quarter as compared to over 2.5% recovered by TRAKAmerica in the past quarter.

"Our approach continues to pay off for our clients in terms of higher net back, and for us in terms of more clients," said Managing Partner Thomas Dalessandro. "When we call on clients and show them our track record with other lenders, it really gets them sitting up in their seats. Best of all, we are continuing to see improvements. Our performance just keeps getting better and better."

### About TRAKAmerica

TRAKAmerica is a rapidly growing legal network management company that has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's recovery success is built on a nationwide network of local attorneys, combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate on the most suit-worthy accounts while its asset location skills and rigorous attorney management procedures ensure that each attorney follows the most statistically likely, cost effective path to recovery on

News
Announce

▸ January 15, 2(
TRAKAmei
To Manage

▸ October 2, 20(
TRAKAmei
Announces
3.0

▸ September 26
TRAKAmei
Expands; /
Executive

▸ September 15
TRAKAmei
Announces
Performan(

▸ March 23, 20(
TRAKAmei
Announces
Collection
Performan(

▸ October 31, 2(
TRAKAmei
Announces
2.0

every account. Since 2000, TRAKAmerica has won ongoing assignments from debt buyers, banks, finance companies, credit unions, auto lenders and others by delivering higher net backs in a secure, compliant environment. Creditors or debt buyers who would like more information about FASTRAK or who would like to run a test file should contact info@TRAKAmerica.com or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



PROVEN LEGAL STR



HOME

ABOUT TRAK

TRAK ADVANTAGES

TRAK PROCESS

FASTRAK SAMPLE

NEWS & EVENTS

## TRAKAmerica Announces FASTRAK 2.0
**Updated Analytic Model Substantially Improves Legal Program Net Back**

SYOSSET, NY, March 20, 2007 — TRAKAmerica, the rapidly growing legal network management company, announced today the release of FASTRAK 2.0, the company's proprietary model for establishing the most effective legal strategy for every account in a portfolio. The newest version of the model includes over 30 variables to predict the likelihood of successful legal action. When combined with TRAKAmerica's disciplined attorney management process and unique asset location skills, FASTRAK 2.0 has proven to boost legal program net back by up to 50% over traditional methods.

"FASTRAK 2.0 is built on our experience with over 400,000 cases, including over $10 million in court costs, over the past four years," said TRAKAmerica Managing Partner Thomas Dalessandro. "Before we developed FASTRAK, we were in the same boat with everyone else, running asset searches on a lot of accounts at vast expense and then pretty much ignoring those where we couldn't find assets. Since FASTRAK doesn't depend on asset information, we can now get a handle on who to sue before we do the asset search. As a result not only are we more likely to be successful with our suits, but also we are less likely to forgo suit just because we can't find an asset. The original FASTRAK model revolutionized our process and the newest version just keeps improving our edge."

"Our beta clients have been uniformly impressed with the effectiveness of FASTRAK and the positive impact on their net back," remarked company CEO Thomas Milana. "Our success is built on three legs. The first leg is the model, which gives us a huge edge in knowing who to sue. The second leg is our disciplined attorney process that ensures our individual attorneys are acting based on historically proven results, not guesswork. The third leg is our heritage as a skip tracer and asset finder. As a result, we only sue cases that are suit worthy, we don't waste money on dead ends and we manage our attorneys carefully and supply them with everything they need to bring the account to a successful resolution."

David Paris, CEO of North Star Capital Acquisitions Group and a FASTRAK 2.0 beta customer, commented, "We have been just

*News Announce*

► January 15, 2
  TRAKAme
  To Manage

► October 2, 200
  TRAKAme
  Announces
  3.0

► September 26
  TRAKAme
  Expands; A
  Executive

► September 15
  TRAKAme
  Announces
  Performanc

► March 23, 200
  TRAKAme
  Announces
  Collection
  Performanc

► October 31, 2
  TRAKAme
  Announces
  2.0

astounded with TRAKAmerica's ability to bring us higher recoveries on our portfolio. They have easily outperformed their nearest competitor and clearly FASTRAK's accuracy gives them a big leg up over their competition."

**About TRAKAmerica**

TRAKAmerica is a rapidly growing legal network management company that has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's recovery success is built on a nationwide network of local attorneys, combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's FASTRAK model permits its attorneys to concentrate on the most suit-worthy accounts while its asset location skills and rigorous attorney management procedures ensure that each attorney follows the most statistically likely, cost effective path to recovery on every account. Since 2000, TRAKAmerica has won ongoing assignments from debt buyers, banks, finance companies, credit unions, auto lenders and others by delivering higher net backs in a secure, compliant environment. Creditors or debt buyers who would like more information about FASTRAK or who would like to run a test file should contact **info@TRAKAmerica.com** or 800.277.4431.

copyright © 2007 TRAKAmerica LLC • 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791 • 800.277.4431 • info@TRAKAmerica.c



**<u>EXHIBIT D</u>**

12/27/2007  23:56   6189434834          REBECCA M BLAKESLEE                    PAGE  03/07

Complaint Small Claims

81-310

UNITED STATES OF AMERICA

**STATE OF ILLINOIS**                                                                    **WABASH COUNTY**
IN THE CIRCUIT COURT OF THE 2ND JUDICIAL CIRCUIT

07080528
CAPITAL ONE BANK                                                              **FILED**

                   ]                                        OCT 2 2 2007

                   ]                                        *Angela K. Crum*
        Plaintiff,       ]                                        WABASH CO CIRCUIT CLERK

v.                  ]      CASE NO. 07-SC-141
JOHN WILLINGHAM         ]

                   ]

                   ]
        Defendant(s)    ]      (File Stamp Here)

# SMALL CLAIMS COMPLAINT

        I, the undersigned, being duly sworn upon oath deposes and claim that the defendant(s) is/are indebted to the plaintiff(s) in the sum of $1090.86 as of October 1, 2007 for breach of contractual terms of a credit card agreement pursuant to the use of the card by the defendant(s), plus, if applicable, contractual interest as called for in the terms, at 26.74%, plus reasonable attorneys fees if provided for in the agreement and that the plaintiff(s) CAPITAL ONE BANK   has/have demanded payment of said sum; that the defendant(s) JOHN WILLINGHAM   reside(s) at 210 E 2ND ST, MOUNT CARMEL IL 62863 ; that the plaintiff(s) CAPITAL ONE BANK   reside(s) at 2001 Maywill Street, Richmond, VA 23230

                  _Signature for the Plaintiff or Attorney for Plaintiff_

Barbara Nilsen
Freedman Anselmo Lindberg & Rappe LLC
PO Box 3228   Naperville, IL 60566-7228
630/983-0770  Fax No. 630-983-3726
Attorney No.  Dupage 42005  Kane 031-26104
      Peoria 1794  Winnebago 3802  IL 03126232
P002CC
CF 89-29

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

12/27/2007  23:56    6189434834    REBECCA M BLAKESLEE    PAGE  04/07

07080528

### IN THE CIRCUIT COURT OF THE 2ND JUDICIAL CIRCUIT
### WABASH COUNTY, ILLINOIS

CAPITAL ONE BANK

YOUR FILE NO.
W157686 4305722130288502

        Plaintiff,

          v.

JOHN WILLINGHAM                    CASE NO.

        Defendant.

# A F F I D A V I T

     This day in the State of New York and County of Nassau, I, Sara Rubin, personally appeared before the undersigned, a Notary Public in and for the jurisdiction aforesaid, who, after being duly sworn according to law, deposed and stated:

1.   I am an agent of and competent of Capital One Bank and I am authorized to make this affidavit on its behalf.

2.   I am personally familiar with and have reviewed the account and records of JOHN WILLINGHAM  , Account No. W157686 and to the best of my knowledge and belief, the above-named defendant either executed the contract ("the Contract"), or used a credit card pursuant to the terms related to this account.

3.   The above named defendant defaulted on the terms of the agreement.

4.   The balance due and owing is $1,065.57 which includes interest accruing on the principal balance of $663.97 at the rate of 26.74% from August 6, 2007 until paid.

5.   The attached Statement of Account is true and accurate to the best of my knowledge and no part of the balance due has been paid by case, discount or otherwise.

                             Affiant

                             Title

STATE OF NEW YORK
COUNTY OF NASSAU

                                              SEP 0 6 2007

Subscribed and sworn to before me, a Notary Public, for the state of New York this ____ day of _____, 20____.

My commission expires on: _____

                                       Notary Public

                                James J. Flood [SEAL]
                            Notary Public, State of New York
                            Reg. #01FL6142574
                            Qualified in Suffolk County
                            My Commission Expires 03/20/2010

F002TRAK

**EXHIBIT E**

1210V5

**Time of Request:** Wednesday, March 26, 2008  12:40:46 EST
**Client ID/Project Name:** 21079
**Number of Lines:** 4540
**Job Number:**    1821:83386289

Research Information

**Service:**   FOCUS(TM) Feature
**Print Request:** All Documents 1-663
**Source:** IL Public Records, Combined
**Search Terms:** "elite recovery" and date(geq (01/01/2007) and leq (12/31/2007))

**Focus Terms:** "elite recovery" /s services and date(geq (01/01/2007) and leq
    (12/31/2007))

**Send to:**   ASCHENBRENER, MICHAEL
           EDELMAN COMBS & LATTURNER
           120 S LA SALLE ST FL 18
           CHICAGO, IL 60603-3593

1. ABBATIELLO;JOHN, 07SC 0002378, 5/18/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC

2. ABERNATHY; RENEE Y, et al., 06M1 0151034, 8/14/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

3. ADAMS,GERALDINE, 07SC006227, SMALL CLAIMS JUDGMENT, 07/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

4. ADETOLA; OLABODE S, 07M1 0151709, 7/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC          HOUSEHOLD BANK

5. AGUILERA,JUANITA, 07SC006241, SMALL CLAIMS JUDGMENT, 07/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

6. ALI,JAMIL S, 07SC004379, SMALL CLAIMS JUDGMENT, 05/24/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

7. ALKILANI; YOSOUR A, et al., 06M1 0150988, 3/15/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

8. ALMAGUER; MARCIAL B, 07M1 0109667, 3/21/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
HOUSEHOLD BANK          ELITE RECOVERY SERVICES

9. ALONSO; FELIPE, 07M1 0163869, 11/19/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
ELITE RECOVERY SERVICES INC

10. ANDERSON,KEVIN M, 07SC001704, SMALL CLAIMS JUDGMENT, 04/04/2007, IL JUDGMENTS AND
LIENS
ELITE RECOVERY SERVICES INC

11. ANDERSON;KEVIN M, 07SC 0001704, 4/26/2007, JUDGMENT, KANE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC

657. GARCIA,MARIA R, 07SC3746, SMALL CLAIMS JUDGMENT, 06/13/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

658. JIMENEZ,ROSA M, 07SC3939, SMALL CLAIMS JUDGMENT, 08/08/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

659. HALE,STEVEN, 07SC621, SMALL CLAIMS JUDGMENT, 10/15/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

660. EWING,CHRISTOPHER M, 07SC2416, SMALL CLAIMS JUDGMENT, 01/08/2007, IL JUDGMENTS AND
LIENS
ELITE RECOVERY SERVICES

661. GEIL,HELEN E, 07SC2417, SMALL CLAIMS JUDGMENT, 01/08/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES

662. HIATT,HELEENA M, 07SC2418, SMALL CLAIMS JUDGMENT, 01/08/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES

663. JERRELL,JANICE E, 07SC184, SMALL CLAIMS JUDGMENT, 09/13/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

**EXHIBIT F**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DALE MACHALLECK,                    )
and JUANITA HERRON,)
on behalf of plaintiffs and the classes    )
described herein,                    )
                                     )        08 C 1340
               Plaintiffs,           )        Judge Hart
                                     )        Magistrate Judge Valdez
          vs.                        )
                                     )
DATA SEARCH N.Y., INC.               )
d/b/a TRAK AMERICA, LLC              )
and TRAK AMERICA, and               )
ELITE RECOVERY SERVICES, INC.,       )
                                     )
               Defendants.           )

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by § 1-109 of the Code of Civil Procedure/ 28 U.S.C. §1746, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt

1

Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

      3.    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991. Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar.

      4.    **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996). He has taught in a nationwide

series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

     5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

     6.    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

3

7.    **Associates**

a.    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003); Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006). He is a member of the Northern District of Illinois trial bar.

b.    **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank 219 F. Supp.2d 935 (N.D. Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.I ll.,2002), 2003 WL 22359626 (N.D. Ill. 2003); Ballard Nursing Center, Inc.  v. GF Healthcare Products, Inc., 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007); Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co., No. 1-07-0684, 2007 Ill. App. LEXIS 1194 (Ill. App. 1st Dist. Nov. 13, 2007).

c.    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude*, 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** Clark v. Experian Info. Solutions, Inc., 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); DeFrancesco v. First Horizon Home Loan Corp., 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); Jeppesen v. New Century Mortgage Corp., 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); Benedia v. Super Fair Cellular, Inc., 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

d.    **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:** Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D. Ill. 2006); Iosello v. Leiblys, Inc., 502 F. Supp.2d 782 (N.D. Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 486 F. Supp.2d 776 (N.D. Ill. 2007).

e.    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006).

**Reported Cases:** <u>Pietras v. Sentry Ins. Co.</u>, 513 F. Supp.2d 983 (N.D. Ill. 2007); <u>Hernandez v. Midland Credit Mgmt.</u>, 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); <u>Balogun v. Midland Credit Mgmt.</u>, 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

        **f.**    **Tiffany N. Hardy** (admitted NY, DC, IL) is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

        **g.**    **Zachary Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

        **h.**    **Rupali Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois College of Law (J.D. 2007).

        **i.**    **Michael J. Aschenbrener** is a graduate of the University of Minnesota (B.A. 2001) and the Chicago-Kent College of Law, Illinois Institute of Technology (J.D. May 2007).

        **8.**    The firm also has 15 legal assistants, as well as other support staff.

        **9.**    Since its inception, the firm has recovered more than $500 million for consumers.

        **10.**    The types of cases handled by the firm are illustrated by the following:

        **11.**    **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, In re Mortgage Escrow Deposit Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: <u>Christakos v. Intercounty Title Co.</u>, 196 F.R.D. 496 (N.D.Ill. 2000); <u>Johnstone v. Bank of America, N.A.</u>, 173 F.Supp.2d 809 (N.D.Ill. 2001); <u>Leon v. Washington Mut. Bank, F.A.</u>, 164 F.Supp.2d 1034 (N.D.Ill. 2001); <u>Williamson v. Advanta Mortg. Corp.</u>, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); <u>McDonald v. Washington Mut. Bank, F.A.</u>, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept.

8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

      **12.**    The recoveries in the escrow overcharge cases alone are over $250 million. Leff was the seminal case on mortgage escrow overcharges.

      **13.**    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

      **14.**    **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

      **15.**    **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

      **a.**    Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

      **b.**    Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

      **c.**    Spot delivery. Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

      **d.**    Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

     **e.**     Improper obligation of cosigners. <u>Lee v. Nationwide Cassell</u>, 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.</u>, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

     **f.**     Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

     **16.**     These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

     **17.**     **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001); <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

     **18.**     **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

     **a.**     Phony nonfiling insurance. <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

     **b.**     The McCarran Ferguson Act exemption. <u>Autry v. Northwest Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

     **c.**    Loan flipping.  Emery v. American General, 71 F.3d 1343 (7th Cir. 1995).  Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

     **d.**    Home improvement financing practices.  Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

     **e.**    Arbitration clauses.  Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

     **f.**    Insurance packing.  Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

     **19.**    **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992).  Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

     **20.**    Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act.  As a result of the Lundquist case, the Federal

Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

**21.    Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995);  Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

**22.**    Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  I argued it before the Supreme Court and Seventh Circuit.  Avila v. Rubin is a leading decision on phony "attorney letters."

**23.    Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions.  One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.   Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006); Murray v. GMAC Mortgage Corp., 05 C 1229, _____ F.Supp.2d _____, 2007 U.S. Dist. LEXIS 26726 (N.D.Ill. April 10, 2007); Shellman v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007

U.S. Dist. LEXIS 27491 (N.D.Ind., April 12, 2007); In re Ocean Bank, 06 C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion, 2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006). More than 15 such cases have been settled on a classwide basis.

    **24.  Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

    **25.  Landlord-tenant:** The firm has brought a number of class actions against landlords for various matters including failing to pay interest on security deposits or commingling security deposits, breach of the warranty of habitability, improper late charges, and various violations of the CRLTO. Reported decisions include: Wang v. Williams,343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); Onni v. Apartment Management and Investment Co., 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2d Dist. 2003) (case challenging improper late charges, which later settled on a class basis for $200,000); Dickson v. West Koke Mill Village P'Ship, 329 Ill.App.3d 341 (4th Dist. 2002). Illustrative cases include: Hale v. East Lake Management & Developmental Corp., et al., 00 CH 16139, in the Cook County Circuit Court, Judge Madden granted class certification for tenants who had not been paid their security deposit interest after the end of each twelve month rental period. The East Lake case later settled on a classwide basis for over $400,000.

    **26.** Some of the other reported decisions in our cases include: Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc., 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court, 778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc., 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v. Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

27.    Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action.  Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.


s/Daniel A. Edelman
Daniel A. Edelman



EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\430\pleading\MODEL Declaration of DAE w_o p 28-35_pleading.WPD

11